We'll hear the next case, Jackson v. Wells Fargo. Good morning, Your Honors. If it may please the Court, Peter Sferd for the appellant, Denise Jackson. Ms. Jackson alleges that she was disparately treated by Wells Fargo over the course of many years as a result of applying for, being approved for refinances that for some reason or another never made it to the closing table. Ms. Jackson alleges in her pro se complaint that she was an African-American woman. You said she alleged she was disparately treated. I'm not sure she does, actually. I mean, she alleges that she was discriminated against on the basis of her race, but she doesn't explain that others who were of a different race were treated differently, does she? Your Honor ---- There's no comparator. Well, Judge, there is, and unfortunately in the rather dense materials that were submitted to the Court and are presented in the pleadings and some of the handwritten writings of the pro se amended complaint, she does allege that she appeared at the Dream Tour that was given by the FHA in which other people appeared with their paperwork to receive this refinancing and were given a decision on the spot. And that, when reviewing a pro se pleading ---- But did she discuss the race of those people? I don't believe that the claim says that everyone standing in line at this Dream Tour, which is probably a couple of hundred people, were all black or white or Hispanic. The pleading does not go into such detail. However, Your Honor, this is where I think the real problem is with the analysis of this case. Ms. Jackson looks at this case as one falling under the Boykin standard, which doesn't necessarily require that a prima facie case be pled, but only that the grounds upon which the claims exist be alleged to give the defendant fair notice of the allegations and the grovement of the complaint. Sure. But you have to allege some facts that would suggest some racial discrimination, right? Well, Ms. Jackson did allege in the pro se complaint that everyone who reviewed her application and had authority over her was white. And you think that's enough to ---- that because they were a race different than hers, we should presume some racial animus? Your Honor, I do believe that in this case, the totality of the circumstances coupled with some of the ---- Tell us what the evidence is. What is the ---- not the evidence. What are the ---- In other words, even assuming the wrong standard is applied under the correct standard, what are the allegations as to a discriminatory motive? So part of it was they were all white, she was black. Is there anything more than that? She alleges that she alleges those facts, but she also alleges that they were redlining her in her neighborhood. They had the total picture of her socioeconomic background through her applications that were run, as well as the fact that she had a somewhat modest amount left on her loan to refinance, the amount of $360,000 versus a house value of over a million at least. And she alleges that as a single black woman whose name was on the deed alone and had lived in her home for many years, and because she was black and because she had been approved twice, that that is the basis for the racial discrimination coupled with the facts that were stated earlier. I understand that the Court would like to see, you know, some perhaps conclusory factual allegations like Wells Fargo gave similarly situated white people the same loans that I would have gotten. Now, as a pro se litigant, as someone without all the facts at their disposal of what Wells Fargo knew or didn't know, it's very difficult for a person, and I think that's acknowledged here and by this Court, that it's very hard to prove succinctly the racial motivational intent of another party, and it's a circumstantial death by a thousand cuts. Does the district court actually get to this issue? In other words, the district court applied the prima facie case standard. The district court made a finding, in essence, that she did not qualify. Did the district court look at what the evidence was that race was a motivating factor? The district court looked at the prima facie elements of the case and found that the pro se pleading missed or did not adequately aver the second and fourth elements of the, I guess it was the FHA allegation, and the district court did err when it relied upon the July 22, 2014 reconciliation letter, which Wells Fargo self-servingly states she didn't qualify for the loans. Now, that was an error in two different areas. Number one, the law is that you cannot read submissions of pro se plaintiffs or parties against their own arguments. But also, Wells Fargo's letter that she didn't qualify was belied by the fact that she was, in fact, approved for these two loans. The first one was erroneously canceled some two years after it was applied for, and that, I think, is a major problem. This Court, the trial court, went too far in finding facts that it should not have and interpreted them incorrectly. The plausibility standard that was applied by the trial court, and I'm sorry, if I'm going afield of your question, I'll stop. But the plausibility standard that was applied by the trial court was wrong because it looked at evidence it shouldn't have looked at, and it drew the incorrect legal conclusions based upon facts that were not there. I mean, I think you're right that the district court made a couple of errors. The question is, applying the correct standard, is there enough in the complaint from which one can infer a discriminatory motive? Judge, I absolutely believe there is. And again, we're looking at the plausibility factor, which isn't, you know, beyond a reasonable doubt. It's a somewhat lower standard, which Your Honors are aware of. But the complaint says they redlined me. They tried to steal my home. They basically, in essence, denied me because I'm black, and I'm a woman, and I'm a single black woman on a deed. This is sort of a subjective assertion, right? What are the facts alleged? The race of the people deciding, that's a fact alleged. There's sort of a vague reference to redlining. But there's not much else, is there? There's not extraordinarily more. But, again, at the pleading stage, the pro se plaintiff should be under a lesser standard, as what was, you know, discussed by the Court. There's enough there to give notice to the defendants about what it is that we're complaining about. The defendants could read the complaint and understand that they're complaining that we redlined. The defendants have notice and understand that the complaint says that we discriminated against her because she was black. All right. You saved some time for rebuttal. Yes. I'm sorry. Yes, Judge. Thank you. Good morning, Your Honors. May it please the Court. Andrew McCity of Reed Smith for the Defendant Appellee, Wells Fargo Bank. So we've got a plausibility standard here, and on one side, you've basically got formulaic recitations of the elements by Ms. Jackson, and that she's an African-American woman who has denied these refinances or modifications. But what Appellant is ignoring is all the other facts that were introduced by Ms. Jackson, both essentially as admissions in her amended pleading and in opposition to the magistrate judge's report, and the documents that she annexes that refute any claim of qualification. I at one point of that qualification show that her application had been granted. So in other words, there's conflicting information in the documents. Some of it says she was qualified. Some of it says she was not qualified. Well, you're talking about two different types of loans. So assuming that the 2012 and even 2013 loan attempts aren't time-barred, the 2012 was a stream FHA streamlot modification. The district court concluded that Jackson had failed to allege that she met the loan requirements. Was that an error? I mean, didn't she allege that she met the loan requirements? She alleged by saying nothing more than I was qualified, which was not plausible Wasn't the district court obliged to accept that, particularly when there were some documents showing that, indeed, her application had been granted? Apparently not once, but twice? Only once, Your Honor. There's a commitment letter for the 2012 loan, and the documents that So why isn't there at least a factual question as to whether she was qualified? I don't think there is a factual question, because you don't have anything to support. The qualification for 2012 has to be measured in why didn't she get the loan. There's no question that she got a commitment. The commitment's not a contract. It says there are contingencies. They told her contemporaneously, it turns out that you don't have the money to close. There's a default under this loan. You can't be in default. There's a $6,000 problem with your escrow count and weight charges. And she never says, she never denies she was told that, and she never claims that she had the ability to make that payment. That's the 2012 qualification. 2013 is a HAMP modification. HAMP modification is a 31 percent You're not going beyond 12b-6 motion, this argument that you're making? There's nothing more than a formulaic recitation of qualification. She's introducing these facts. Defendant didn't introduce these facts. The plaintiff did. And they disprove her formulaic recitation of qualification. She says herself, I was — my ratio wasn't 31 percent or 40 percent. It was 98 percent. That's in her opposition to the magistrate judge's report and recommendation. When she applied for the streamline modification, which has very limited documentation, she's saying at a 5.78 percent interest rate, that that was 98 percent of her gross income. The HAMP modification actually looks at your financial ability. And they said, you can't afford this house. She admits that they contemporaneously told her, you can't afford this house. We can't make this work at 31 percent. We can't make this work at 40 percent. She doesn't say, that wasn't my correct income. She puts that information in there as to what her gross — what they told her her gross income was. She doesn't say that was mistaken. How could she be qualified with a gross income of $2,900? She's saying, I could not afford this. So I think the district court was correct in finding that she was not qualified. And the information that she attached to her pleadings — I mean, essentially, you've had two shots at amending, because there's a complaint, there's an amended pleading, and then there are new facts introduced by appellant in opposition to the referee's report. But the facts just keep getting worse in terms of qualification. And the Court's correct. She never says that similarly situated people outside the protected class were treated differently. Even the allegation about the Javits Center is specific to her. She's — plausibility again. Even if she knew what the people were being — everybody else there was being told somehow, she's saying everyone else, not people outside my protected class. She's saying everyone else was treated differently than her. Well, I think she's — if you read it liberally, she's saying that people in her neighborhood, poor people, African-Americans, the redlining issue. I mean, if you really wanted to read it liberally, you would add those facts into the mix. But the redlining allegation is really nothing more than using the word redlining. And it actually is contradicted by some of her other allegations where she's saying, well, she's being treated differently because this is a poor neighborhood, while at the same time saying her house is worth an enormous amount of money, and they're trying to steal the equity. That seems sort of inconsistent with preying on poor people. Did the district court consider the issue of what evidence there was of race as a motivating factor? As opposed to she failed to allege the second and fourth elements of the prima facie case, she wasn't qualified. She didn't allege that she was qualified. Did the district court reach the question of the allegations of race as a motive? It seems as though the district court concluded that that was a higher standard than under the FHA claim, and on the facts pled, discrimination simply wasn't plausible. Just turning back to the statute of limitations point, with respect to the FHA claim, it seems pretty clear that there's no continuous course of conduct, and you've got three discrete events. And so, at least for FHA purposes, only the 2014 loan would fall outside that claim. Weren't there continuing discussions about that first loan that went on for a while as to whether she was going to get it? I mean, the final decision isn't really made until 2014. Isn't that true? No, that's not, Your Honor. She says the bank told her. The bank says that they told her in August 2012. She says the bank told her she was denied in September 2012. She says she did not. She continued to communicate writing letters to Wells Fargo and did not receive official notice that her 2012 application had been denied until 2014. Well, she also says she was told in September 2014 that she was denied. Excuse me, September 2012 that she was denied. Well, she was told initially, but then she, in essence, appealed it within the bank. Does that matter to the statute of limitations analysis? And she didn't get official word until 2014. I don't think that that's in any way accurate. I think that's just her misunderstanding of what's going on. What happened in 2014 is they're telling her. Is that her allegation? It's unclear that that's her allegation, except in her appellant's reply brief. Below, she seems to be saying they told me I was denied. They say I was denied in August. They told me in person I was denied or a phone call that I was denied in September. I reapplied in 2013 for a different kind of mod. Then in 2014, they send the letter basically saying we should have checked your financials more closely. Here's our apology. Please reapply, which she seems to think is a contract. But it's unclear for what terms. Unless the Court has anything further. Thank you. We'll hear the rebuttal. Just directing the Court to the record at A198, November 2, 2014, email. Josh, I paid another mortgage payment October 31 of 2014. November 1, 2014, I received a letter from Wells Fargo dated October 24, 2014, stating my closing date was November 1 yesterday. I spoke to Sean Henry last week, and he said I was not approved. Such contradictory information. Proof that she got the loan. There was apparently a closing scheduled, but they never notified her in a timely fashion so that she could actually go to the closing. And with respect to the statute of limitations issue, this was an ongoing controversy. The brief does contrast one case from this Court that said that separate loan applications for refinancing or mortgages are separate and distinct events where one loan is denied and then you go and apply for a different one. However, Ms. Jackson could not know of this, could not be aware of the disparate treatment that she was receiving until the weight of the facts and evidence just came piling down on her. And I believe that the factual issues, the fact that there are factual issues with respect to when there was official notification that the loan was canceled, whether the reconciliation letter, which finally the bank sort of gave her some explanation for the events of the last two years, was in fact that date or not. The issue that there's facts enough mean this has to go to discovery to find out when the statute of limitations told or didn't told or when they ran or didn't run. I think that covers that issue with respect to statute of limitations, and I yield the balance of my time. Roberts. Thank you. We'll reserve decision.